IN THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE,
AT CHATTANOOGA

| | |
|---|---|
| LEXINGTON INSURANCE COMPANY, | ) |
| Plaintiff, | ) |
| v. | ) No. 1:09CV159 |
| PIONEER CREDIT COMPANY, INC. | ) CLC/WBC |
| Defendant. | ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

Lexington Insurance Company ("Lexington"), pursuant to 28 U.S.C. §§ 2201 and 2202, files this Complaint for Declaratory Judgment against Defendant Pioneer Credit Company, Inc. and would show the Court as follows:

### I. PARTIES

1. Lexington is a Delaware corporation with its principal place of business at 100 Summer Street, Boston, Massachusetts 02110.

2. Pioneer Credit Company, Inc. ("Pioneer"), is a Tennessee corporation with its principal place of business at 1870 Executive Park NW, Cleveland, Tennessee 37312. This Complaint is based on actions which occurred in Pioneer's Mt. Pleasant, Texas branch. Pioneer may be served with pleadings through its registered agent, Corporation Service Company, located at 2908 Poston Avenue, Nashville, Tennessee 37203.

### II. JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 and the Federal Declaratory Judgment Act, codified at 28 U.S.C. §§ 2201 and 2202.

4. Venue is proper in this judicial district under 28 U.S.C. § 1391.

## III. ALLEGATIONS

5. On or about August 13, 2007, a renewal application for insurance coverage was completed on behalf of Pioneer by the company's CEO, John W. Holden, Jr. (Policy application attached as Exhibit "A"). Pioneer was first insured by Plaintiff in August 2004.

6. After consideration of the renewal application, Plaintiff Lexington issued a Financial Institution Bond #0169036 ("Bond") to Pioneer effective for the period of August 21, 2007 to August 21, 2008. Though subject to some exclusions, the Bond generally indemnified Pioneer from "loss resulting directly from dishonest or fraudulent acts committed by an Employee acting alone or in collusion with others." (See Bond attached as Exhibit "B"). The Bond provided coverage subject to a $250,000.00 single loss limit and a $15,000.00 single loss deductible.

7. The Bond specifically stated that it was issued "…in reliance upon all statements made and information furnished to the Underwriter by the Insured in applying for [the] bond…." Accordingly, Lexington agreed to provide coverage on the basis of the warranties provided in the renewal application.

8. As part of the insurance renewal application, Pioneer was required to disclose information regarding its Internal Control mechanisms. Specifically, subpart 12 of the application asked:

> (a) Do you require annual vacations of at least two consecutive weeks for all officers and employees?
>
> (b) Is there a formal, planned program requiring the rotation of duties of key personnel without prior notice thereof?
>
> (c) Is there a formal, planned program requiring segregation of duties so that no single transaction can be fully controlled from origination to posting by one person?

Pioneer responded to each of these inquiries by answering "Yes."

9. These internal control mechanisms are commonly utilized in the industry to prevent loss caused by employee dishonesty and fraudulent acts.

10. Based on information and belief, Pioneer's responses to the questions regarding its Internal Controls were inaccurate. Pioneer did not have in place:

> (a) A requirement that annual vacations of at least two consecutive weeks be taken for all officers and employees;
>
> (b) A formal, planned program requiring the rotation of duties of key personnel without prior notice thereof;
>
> (c) A formal, planned program requiring segregation of duties so that no single transaction can be fully controlled from origination to posting by one person.

11. Pioneer has now sought to recover under the subject Bond for the alleged misconduct of employees at its Mt. Pleasant, Texas branch. Specifically, Pioneer submitted two Proofs of Loss (attached as Exhibit "C") dated August 18, 2008 contending Ms. Lawanda Maricle, branch Manager, and Ms. Melissa Morris, Assistant Manager, made fraudulent loans by using other individuals' identities and misappropriated $108,924.29. The claimed date of discovery for Ms. Maricle is June 30, 2008; the claimed date of discovery for Ms. Morris is June 23, 2008. The claimed period of loss is September 6, 2005 to June 19, 2008.

12. The loss location, Mt. Pleasant, Texas branch, had only three employees: manager, assistant manager, and cashier. The manager and assistant manager colluded to make fraudulent loans and steal money from the company.

13. As noted above, Pioneer misrepresented in its renewal application that it had in place:

> (a) A requirement that annual vacations of at least two consecutive weeks be taken for all officers and employees;

(b) A formal, planned program requiring the rotation of duties of key personnel without prior notice thereof;

(c) A formal, planned program requiring segregation of duties so that no single transaction can be fully controlled from origination to posting by one person.

14. Tennessee Code Annotated § 56-7-103 states "no written or oral misrepresentation or warranty made in the negotiations of a contract or policy of insurance, or in the application for contract or policy of insurance, by the insured or in the insured's behalf, shall be deemed material or defeat or void the policy or prevent its attaching, unless the misrepresentation or warranty is made with actual intent to deceive, or unless the matter represented increases the risk of loss."

15. The misrepresentations made by Defendant in response to subsection 12 of its renewal application regarding Internal Controls increased the risk of loss and voids the policy issued by Lexington under Tenn. Code Ann. § 56-7-103. This misrepresentation increased the risk of loss and/or was intended to deceive Lexington.

16. An actual, present, and justiciable controversy has arisen and now exists between Plaintiff and Defendant concerning their respective rights and duties in that Defendant contends it is entitled to payment reimbursing it for the fraudulent conduct of its employees under the Fidelity Bond issued by Lexington, whereas Plaintiff disputes this contention and contends that the Bond is null and void due to the Defendant's misrepresentation on the renewal application regarding its Internal Controls. This misrepresentation was made with actual intent to deceive and/or increased the risk of loss.

## IV. REQUESTED RELIEF

17. Plaintiff desires a judicial determination of its rights and duties with respect to the Fidelity Bond issued to Defendant, and a declaration as to whether the bond issued to Defendant is void.

18. A judicial declaration is necessary and appropriate at this time under the circumstances in order that Plaintiff may ascertain its rights and duties.

19. Plaintiff further requests to tender the premium paid by Defendant into Court prior to trial in this matter.

WHEREFORE, Plaintiff prays for judgment against Defendant, for a declaration that the Bond issued by Plaintiff is void as a matter of law, and for such other and further relief to which it is entitled by law.

Respectfully submitted,

**CHAMBLISS, BAHNER & STOPHEL, P.C.**

By: _____
F. Laurens Brock, BPR No. 017666
David J. Ward, BPR No. 013449
T. Ryan Malone, BPR No. 023762
1000 Tallan Building
Two Union Square
Chattanooga, Tennessee 37402
Telephone: (423) 756-3000
Facsimile: (423) 265-9574

*Attorneys for Plaintiff*